```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

```
UNITED STATES OF AMERICA,       )
                                )
     Plaintiff,                 )
                                )
vs.                             )   No. 02-20449 MaV
                                )
                                )
MARTIN LEWIS,                   )
                                )
     Defendant.                 )
```

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

The defendant, Martin Lewis ("Lewis"), has been charged with several crimes, including murder. Before the court is Lewis's October 31, 2011 motion[1] to exclude evidence of phone calls made while Lewis was incarcerated at the Shelby County Correction Center. The government filed a timely response to Lewis's motion. The motion was referred to the United States Magistrate Judge for a report and recommendation.[2]

The court held an evidentiary hearing on November 16, 2011. At the hearing, the government called one witness, Carolyn Chambers ("Chambers"), and entered into evidence a recording of one of

---

[1]. Lewis actually filed an earlier motion on June 1, 2011 arguing that his phone call recordings should be excluded because they may have been improperly obtained by grand jury subpoena. (D.E. 1017.) However, the government established in its response that the recordings were actually acquired simply by asking local authorities for them. (D.E. 1070.) Because the government's response mooted Lewis's initial motion, Lewis filed a reply to the government's response, renewing the motion based on other grounds. (D.E. 1143.)

[2]. Lewis's motion was referred for determination, but because it is a motion to suppress, a report and recommendation is being submitted instead.

Lewis's phone calls made while being held at the Shelby County Correctional Center. The defendant did not call any witnesses to testify or introduce any exhibits. After careful consideration of the statements of counsel, the exhibits, the testimony of the witnesses, and the entire record in this case, the court submits the following findings of facts and conclusions of law and recommends that Lewis's motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

Chambers has worked for the Shelby County Sheriff's department for fifteen years. One of her duties was to pull phone call recordings for evidence from the various prison and jails within Shelby County: the Shelby County Jail at 201 Poplar; the Shelby County Correctional Center (the "Penal Farm"); and Jail East. At the time Lewis's phone calls were recorded, he was housed at the Penal Farm in Pod #5. At the time the recordings of Lewis's call were pulled, Chambers was the only person who had access to these phone recordings. Chambers testified that phones at the Penal Farm are in open areas of the pods and accessible to all inmates in a pod; there are no phone booths. Machines record all inmate phone calls. According to Chambers, before inmates can make calls, each inmate must enter a personal identification number, which allows local law enforcement to identify the inmate who made the call. The computer system also logs what numbers are dialed out by inmates.

Chambers testified that inmates are given multiple warnings that their phone conversations may be recorded or monitored. Inmates are first warned during booking and are also reminded by plastic sheets near the phones and by signs posted above the phones. Chambers also testified that, before inmates make calls, an oral warning message reminds inmates that their calls are subject to monitoring and recording. Inmates are also notified in the recording that they can use a private, non-recorded phone to converse with legal counsel. This accommodation is provided upon inmate request. Chambers testified that these recordings are not released to the public without a court order or subpoena; however, Chambers said that recordings are given to prosecutors or investigators upon request.

On April 24, 2007, Chambers was asked by an officer within the Memphis Police Department to report "any [of Lewis's] calls relating to homicide." To locate and review these recordings, Chambers stated that she first had to learn where Lewis was housed and find his personal identification number. Using his identification number, Chambers cross-referenced the numbers dialed by Lewis with other inmates' identification numbers to determine whether Lewis borrowed another inmate's identification number to make outgoing calls. This cross-referencing revealed that Lewis did make calls using another inmate's identification number.

While listening to the recordings of Lewis's phone calls,

Chambers came across a recording in which Lewis called a woman, allegedly his girlfriend, using another inmate's identification number. Although Lewis was using another inmate's identification number, Chambers testified that it was indeed Lewis who made the call. Chambers stated that she listened to several of Lewis's other calls and that she recognized Lewis's voice. Chambers also stated that the woman, whom he initially called, was a number dialed by Lewis using his true identification number on several occasions.

This woman then made a three-way call to Marcus Brandon, a co-conspirator in this case. The government offered a recording of this call into evidence. In this three-way call, Lewis made several threats to Marcus Brandon. In support of his threats, Lewis stated that he just "exed" somebody.

## II.  PROPOSED CONCLUSIONS OF LAW

In his brief, Lewis contends that the recording should be suppressed because (1) the calls were recorded without proper notice to Lewis, (2) the recordings violate Lewis's Fifth and Sixth Amendment rights, and (3) the government cannot establish that the recordings do not violate Title III. (D.E. 1143, at 2-3.) In opposition, the government contends that Lewis was provided adequate notice of the recording practice and that Lewis consented to the recording by making the call. The government also asserts that Lewis was not entitled to counsel before recording began and

4

that the recording of the defendant's jail phone calls falls within exceptions to Title III.[3]

A. <u>Standing</u>

As an initial matter, the court must determine if Lewis has standing to seek suppression of the recording. The government raised the issue of standing at the hearing. Because at this time the only proof before the court is the testimony of Chambers that Lewis made the call, the court finds Lewis has standing.

B. <u>Whether the Recording Violates Title III</u>

Title III, 18 U.S.C. §§ 2510-22, generally prohibits the intentional interception of wire communications, such as telephone calls, without judicial authorization. Communications that are unlawfully intercepted and recorded may not be used at trial. 18 U.S.C. § 2515. There are exceptions to Title III's exclusionary provision when a party has either explicitly or implicitly consented to the communication's interception. 18 U.S.C. 2511(2)(c). Communications intercepted by investigative or law enforcement officers in the ordinary course of duty are also exempted. 18 U.S.C. 2510(5)(a). The government argues that both of these exceptions apply. The court agrees.

---

3. This report and recommendation only concerns whether the recording violated Lewis's constitutional and statutory rights. This court does not address any issues dealing with the recording's authentication and later use during trial.

1.  *Consent*

Several circuits have found that inmates consent to recording and monitoring when they proceed with their calls despite being warned of a facility's recording or monitoring policy. *See, e.g.*, *United States v. Hodge*, 85 Fed. Appx. 278, 281 (3rd Cir. 2003) (finding the record clear that the defendant, a pretrial detainee, "had adequate notice of the taping of calls and essentially consented to the recording"); *United States v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003) (finding implied consent where an inmate chose to proceed with a phone call after receiving notice of recording); *United States v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002) (noting that the consent exception applies when inmates are required to permit monitoring as a condition of using the telephones); *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000)(same); *United States v. Workman*, 80 F.3d 688, 693 (2nd. Cir. 1996); *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996).

In this case, Chambers testified that inmates were notified of the recording and monitoring policy initially at booking. Additionally, several reminders were posted and an actual recorded message specifically warned inmates that their phone calls were subject to monitoring or recording before they placed calls. Despite these warnings, Lewis proceeded with the phone call.

Accordingly, the court recommends a finding that Lewis consented to the recording.

2. *Communications Intercepted During the Ordinary Course of Duty*

Similar to the consent exception, Title III does not apply when officers record inmates' conversations during the ordinary course of duty, pursuant to valid regulations and policies known to inmates. *See* 18 U.S.C. 2510(5)(a)(excluding from the definition of "interception" recordings made by "any telephone or telegraph instrument, equipment or facility . . . by an investigative or law enforcement officer in the ordinary course of his duties"); *United States v. Paul*, 614 F.2d 115, 117 (6th Cir. 1980)(refusing to suppress telephone conversations of a prisoner recorded pursuant to Bureau of Prisons rules and policies); *see also Hammond*, 286 F.3d at 192. Again, Chambers testified that the facility had a policy of recording all inmate conversations and that this policy was known to inmates. Thus, this exception also excludes the recording from the ambit of Title III.

C. <u>Whether Proper Notice of the Recording Policy Was Provided</u>

Without citing any authority, Lewis raises several arguments in his motion concerning the sufficiency of the recorded notice provided to inmates before they make outgoing phone calls. First, Lewis argues that the notice provided while initiating a telephone call may not be audible to the caller. However, the record reveals that several other notices were given to inmates besides the verbal

7

one provided while actually dialing out from the facility. Indeed, Chambers testified that notices are posted above and near phones and that inmates are also made aware of the policy at booking. Moreover, Chambers testified that Lewis used another inmate's identification number, which suggests that he was fully aware that his calls may be monitored or recorded.

Lewis also argues that the notice does not state that the recordings will be retained and for how long. But inmates were warned that their telephone conversations would be recorded. A recording is a "record." Common sense dictates that such recordings, as "records," will be, in fact, retained. The court also finds the duration of retention inconsequential. The court could not find, and counsel fails to cite, any cases that demonstrate that length of retention somehow corresponds to a statutory or constitutional violation. Nor does Lewis demonstrate how the policy, in fact, violated his rights. Thus, the court finds this argument immaterial in the motion to suppress.

Lewis's other arguments on this issue concern the government's use of the recording: (1) that "the notice does not state that the purpose or use of the recording could be broader than the implicit rational for the recording, i.e., the 'safety of the facility'; and (2) that "the notice does not state that the recordings are subject to being provided to random third parties upon an unsupported request and without notice to the inmate." (D.E. 1143, at 3.)

Lewis avers that because of these alleged insufficiencies, he "did not waive his rights to privacy beyond the scope of a reasonable interpretation of the notice itself." (D.E. 1143, at 3.) According to Lewis, permitting the government to use the recording would violate his right to privacy.

A constitutionally protected right of privacy exists when a person has a subjective expectation of privacy that society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 360–61 (1968) (Harlan, J., concurring). Inmates, however, have a substantially reduced right of privacy while incarcerated. *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates . . . to ensure institutional security and internal order.") Security and safety concerns provide a compelling reason to monitor or record an inmate's telephone conversations. *United States v. Van Poyk*, 77 F.3d 285, 291 (9th Cir. 1996). Additionally, Lewis's subjective expectation of privacy is further reduced because he proceeded to make the call despite numerous warnings about the facility's recording and monitoring policy. Other courts confronted with same issue have held "that defendants have no reasonable expectation of privacy in non-attorney telephone calls made from detention centers once a defendant has received notice of monitoring and recording of such

calls." *United States v. Brown*, No. 06-867 (JHR), 2008 WL 5377755, at *2-3 (D.N.J. Dec. 18, 2008)(citing *United States v. Willoughby*, 860 F.2d 15, 20-22 (2nd Cir. 1998); *United States v. Solomon*, No. 02:05-cr-385, 2007 WL 2702792, at *1 (W.D. Pa. Sept. 13, 2007); *United States v. Plummer*, No. 2:05-cr-336, 2006 WL 2226010, at * 6 (W.D. Pa. Aug. 2, 2006)). Accordingly, this court recommends a finding that Lewis has no reasonable expectation of privacy in these recordings.[4]

Lewis also asserts that these tapes can only be used to further institutional safety and not by the government in Lewis's prosecution. However, as noted by the government in its response, inmates abuse their telephone privileges in ways other than those that threaten immediate facility security. Indeed, this abuse also includes facilitating illegal activities outside of a correctional facility, as Lewis did by using his privileges to threaten to murder his co-conspirator. The court also finds no reason to limit the use of the recording because, as discussed above, Lewis consented to the recording and has no reasonable expectation of privacy in these recordings. And once the provisions of Title III exempt a recording, no judicial intervention is necessary for any further use. *United States v. Hammond*, 286 F.3d 189, 192-93 (4th

---

4. Lewis's counsel also argued that Lewis may have more rights as a pretrial detainee. However, the "maintenance of prison security and preservation of institutional order and discipline are 'essential goals that may require limitation or retraction of the retained constitutional rights of *both convicted prisoners and pretrial detainees*." *Willoughby*, 860 F.2d at 21 (emphasis added)(quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979)).

Cir. 2002); *In re High Fructose Corn Syrup Antitrust Litigation*, 216 F.3d 621, 624-26 (7th Cir. 2000). The court is unaware, and Lewis fails to cite, any authority that states that there are limits to the government's use of a recording once lawfully obtained.[5]

D.  <u>Whether the Recording Violated Lewis's Fifth and Sixth Amendment Rights</u>

Without citing authority, Lewis argues that asking a represented party to agree to a recording policy before making a phone call violates his Fifth and Sixth Amendment rights. These arguments fail.

The Fifth Amendment prohibits only compelled testimony that is incriminating. *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 189 (2004). Here, Lewis voluntarily made an outgoing call, despite numerous warnings, to his alleged girlfriend. While perhaps incriminating statements were made during the call, this voluntary act cannot be considered compelled. This argument is insufficient to suppress the recording.

To establish a Sixth Amendment violation Lewis must show that the government "took some action, beyond merely listening, designed deliberately to elicit incriminating marks." *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). The facility took no action to elicit incriminating statements from Lewis; it passively monitored and

---

  5.   Lewis argues that these tapes contain intimate details and should not be released to third parties without judicial oversight. However, Chambers testified that these recordings are released to non-law enforcement personnel only upon court order or subpoena.

recorded all inmate conversations. Therefore, this argument also fails.

### III. RECOMMENDATION

For the reasons expressed above, it is recommended that Lewis's motion to suppress be denied.

Respectfully submitted this 1st day of December, 2011.

s/Diane K. Vescovo<br>
DIANE K. VESCOVO<br>
UNITED STATES MAGISTRATE JUDGE